**EXHIBIT F**

| DISTRICT COURT, DENVER COUNTY, COLORADO<br>1437 Bannock St., Room 256<br>Denver, CO 80202 | DATE FILED: March 27, 2015 10:09 AM<br>FILING ID: BC8D5390690AA<br>CASE NUMBER: 2015CV31102 |
|---|---|
| **Plaintiffs:**<br><br>SLAWSON EXPLORATION COMPANY, INC.,<br><br>v.<br><br>**Defendant:**<br><br>ARCH SPECIALTY INSURANCE COMPANY, a Nebraska corporation. | ▲ COURT USE ONLY ▲<br><br>Case No. _____<br><br>Division/Courtroom _____ |
| Attorneys For: Plaintiff Slawson Exploration Company, Inc.<br>Name: Christopher R. Mosley, #24440,<br>Katherine D. Varholak, #35498<br>Address: 633 17th Street, #3000<br>Denver, CO 80202<br>Phone No.: (303) 297-2900<br>Fax No: (303) 298-0940<br>Email: cmosley@shermanhoward.com<br>kvarholak@shermanhoward.com | |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff Slawson Exploration Company, Inc. ("SECI"), alleges and states as follows:

### PARTIES AND RELATED ENTITIES

1.  Plaintiff SECI is a Kansas corporation with its principal place of business at 727 North Waco, Suite 400, Wichita, Kansas 67203.

2.  SECI is registered to do business and in good standing in Colorado, with offices at 1675 Broadway, Suite 1600, Denver, Colorado 80202.

3.  Defendant Arch Specialty Insurance Company ("Arch Specialty") is a Nebraska corporation with its home office address at 10909 Mill Valley Road, Suite 210, Omaha, Nebraska 68154

4.  Arch Specialty is member of, and a subsidiary of, the Arch Insurance Group ("Arch Group"), a Missouri corporation with its principal place of business at 300 Plaza Three, Third Floor, Jersey City, New Jersey 07311.

1

5.  Arch Group is registered to do business and in good standing in Colorado, with offices at 8400 E. Crescent Parkway, Suite 225, Greenwood Village, Colorado 80111.

## JURISDICTION AND VENUE

6.  This Court has personal jurisdiction in this civil action, as defendant Arch Specialty does business in the State of Colorado, has entered into a contract to insure parties located in Colorado at the time of contracting, purposefully availed itself of the rights and privileges of the State of Colorado, committed the wrongful acts described below in the State of Colorado, and Arch Specialty's parent, Arch Group, maintains offices in the State of Colorado. C.R.S.§ 13-1-124(1)(a), (b), (d).

7.  The policy of insurance at issue in this lawsuit further provides:

In the event of the failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction. All matters arising under this Policy shall be determined in accordance with the law and practice of such Court[.]

8.  Venue is proper in this jurisdiction because Arch Specialty is a nonresident of this state and the District Court, Denver County is designated in this Complaint. C.R.C.P. 98(c)(1).

## FACTS

### The Policy

9.  Arch Specialty issued to SECI an "Excess Third Party Liability Policy," policy number EE0039761-03, for a policy period beginning July 1, 2013, and ending July 1, 2014 (the "Policy").

10. SECI is an Insured as defined in the Policy. The Policy lists the "Named Insured" as "Slawson Companies, Inc." and includes "any person or organization qualifying as an insured under controlling underlying insurance...." SECI qualifies as an insured under the controlling underlying insurance, and is therefore an Insured under the Policy.

11. Section I of the Policy contains an insuring agreement, which provides as follows:

We will pay on behalf of the insured, except as otherwise stated in this policy, those amounts of loss for which coverage is provided under the definitions, terms, conditions, limitations and exclusions of the **controlling underlying insurance** in effect at the inception of this policy and which exceeds the total Limits of Liability of **underlying insurance** as stated in Items 3.a. and 3.b. of Schedule A – Schedule of Underlying Insurance of this policy.

(Boldface in original).

2

12. In Section V.c., the Policy defines "Loss" to include "amounts paid to settle a claim or suit, or satisfy a judgment, for which the insured is legally liable."

13. Section V.g. of the Policy defines "underlying insurance" as "all policies and the Limits of Liability listed in items 3.a and 3.b of Schedule A – Schedule of Underlying Insurance of this policy.

14. Schedule A of the Policy, at paragraph 3.a, titled "Controlling Underlying Insurance" lists Federal Insurance Company ("Federal"), Policy Number 7981-72-74, effective for the policy period July 1, 2013 to July 1, 2014, with applicable limits of liability of: $5,000,000 each occurrence, $5,000,000 general aggregate and $5,000,000 products-completed operations aggregate.

15. Schedule A of the Policy lists no insurer (i.e., is left blank) under section 3.b., titled "[o]ther underlying insurance."

16. The Policy requires payment of loss "on behalf of" an insured. Under pay-on-behalf-of coverage, the insurer, not the insured, pays all loss. The insurer has no right under pay-on-behalf-of coverage to require an insured to pay for loss and then seek reimbursement from the insurer.

17. Section II.f. of the Policy provides:

Subject to Paragraphs II.a, II.b, II.c, II.d. and II.e. above, if Limits of Liability of Underlying Insurance stated in Item 3. of the Declarations are reduced or exhausted solely by payment of loss (including any defense expenses that reduce the limit of liability of the **underlying insurance**) to which this policy applies, such insurance provided by this policy will apply in excess of the reduced **underlying insurance** or, if all **underlying insurance** is exhausted, will apply as **underlying insurance** subject to the same definitions, terms, conditions, limitations and exclusions of the **controlling underlying insurance**, except as otherwise limited by the definitions, terms, conditions, limitations and exclusions of this policy.

(Boldface in original).

18. Section VI.k. contains a "Loss Payable" clause, which provides as follows:

Liability under this policy shall not apply unless and until the underlying insurer(s) has paid or has been held liable to pay for the full amount of their Limits of Liability as shown on Schedule A – Schedule of Underlying Insurance. In the event of a settlement for less than the full amount of the limits of liability of the underlying insurance, the insured shall be responsible for any difference between the Limits of Liability as shown on Schedule A – Schedule of Underlying Insurance and the limits of liability available in the underlying insurance before this insurance becomes applicable with respect to any claim, suit, demand or loss covered by this policy.

3

19. This "Loss Payable" clause provides excess coverage where an insured negotiates a settlement with the claimant, and the full amount of the limits of liability of the underlying insurance is paid toward the settlement, in part, by the underlying insurer and in part by the insured. In that circumstance, the excess coverage provided in the Policy is available to satisfy the balance of the settlement payment the insured owes to the claimant.

## The Underlying Actions

20. On July 6, 2013, a train transporting crude oil from North Dakota to a facility in Canada derailed in the municipality of Lac-Megantic, Quebec, Canada, resulting in multiple fires and explosions that allegedly caused approximately 47 deaths, additional injuries, and damaged multiple properties (the "Incident").

21. Several legal actions arose out of the Incident, including (1) a putative class action captioned *Yannick Gagné d/b/a Musi-Café, Guy Ouellet, Serge Jacques and Louis-Serges Parent v. Rail World, Inc., Rail World Holdings, LLC, Slawson Exploration Co.*, et. al., No. 480-06-000001-132, Superior Court, District of Mégantic, Quebec, Canada, (2) a bankruptcy petition captioned *In re Montreal, Maine & Atlantic Railway Ltd.*, Bankr. D. Me. No. 13-10670, United States Bankruptcy Court, District of Maine, (3) a companion Canadian bankruptcy case captioned *In the Matter of the Plan of Compromise or Arrangement of Montreal, Maine & Atlantic Canada Co.*, Superior Court, Province of Québec, No. 500-11-045094-139, and (4) wrongful death actions currently pending in the State of Illinois (the "Underlying Actions").

22. The putative class action and wrongful death actions have named, among others: the oil transporters and the oil producers as defendants. SECI produced certain volumes of the oil on the train at the time of the Incident, and has been named as a defendant based upon its status as an oil producer. SECI faced significant exposure to liability and damages in the Underlying Actions. The damages asserted against SECI, if proven, could have exceeded the limits of all insurance available to SECI.

23. SECI put its insurers, including Federal and Arch Specialty, on notice of the Incident and the Underlying Actions.

24. In recognition of the nature and complexity of the Underlying Actions, and in order to avoid what will be costly and protracted litigation, the parties to those actions, including SECI, have engaged in extensive negotiations to reach a global settlement (the "Global Settlement"). The Global Settlement will, in part, establish a fund for claims arising out of the Incident in exchange for global releases of the claims asserted against SECI and others in the Underlying Actions.

25. SECI kept Arch Specialty and Federal informed of the status of the negotiations concerning the Global Settlement.

26. On or about March 23, 2015, the oil-producer defendants in the Underlying Actions and the Bankruptcy Trustee reached an agreement to resolve all claims against them in and relating to the Underlying Actions.

27. In connection with this agreement, SECI and Federal agreed to jointly contribute toward the Global Settlement of the Underlying Actions. SECI's and Federal's joint contribution is, in the aggregate, sufficient to exhaust the limits of liability of the Federal policy.

28. The aggregate of SECI's underlying limits of liability under the Federal policy, however, is insufficient to fund the full settlement amount SECI is legally obligated to contribute toward the Global Settlement.

29. SECI, therefore, must fund the balance of its contribution toward the Global Settlement from the coverage that should have been afforded under the Policy.

30. The settlement amount SECI is legally obligated to pay under the Global Settlement is a "Loss" under the Policy for which coverage is provided under the definitions, terms, conditions, limitations and exclusions of the controlling underlying insurance, i.e., the Federal policy

### Arch Denies Coverage Under the Policy

31. All premiums for the Policy have been timely and fully paid and SECI has satisfied all conditions, terms and other requirements, if any, under the Policy.

32. SECI promptly provided Arch Specialty with notice of the Underlying Actions and kept Arch informed of the negotiations of the Global Settlement.

33. On June 17, 2014, SECI notified Arch Specialty of the filing of the Fourth Amended Motion to Authorize the Bringing of a Class Action & to Ascribe the Status of Representative. In that communication, SECI informed Arch Specialty that the Bankruptcy Trustee for the party that has all but admitted liability, Maine, Montreal, and Atlantic Railway, had contacted counsel for the plaintiffs and the oil producing defendants to initiate settlement discussions concerning the Underlying Actions and the Global Settlement.

34. The discussions concerning the Global Settlement continued into the fall of 2014.

35. SECI kept Arch Specialty apprised of the settlement negotiations and provided opportunities for Arch Specialty to participate in the settlement process, all of which Arch Specialty declined. For example, on November 11, 2014, SECI updated Arch Specialty concerning the status of the settlement negotiations and, at that time, proposed a settlement structure that would exhaust the limits of liability of the underlying insurance (i.e., the Federal policy) and require a contribution from the excess layer of coverage (i.e., Arch Specialty's Policy). Arch Specialty did not agree to participate.

36. On November 12, 2014, SECI updated Arch Specialty with additional detail concerning the status of the Global Settlement and again requested that Arch Specialty contribute to the Global Settlement from the excess layer provided by the Policy. Arch Specialty did not agree to participate.

5

37. On November 14, 2014, Arch Specialty, through its outside counsel, notified SECI that Arch Specialty denied coverage based upon its contention that the limits of liability of the underlying insurance would not be exhausted by the settlement proposal.

38. On November 17, 2014, SECI responded to Arch Specialty's outside counsel and identified the specific provisions of the Policy that trigger Arch Specialty's excess coverage where SECI and its underlying insurer both contribute toward a settlement that would, in the aggregate, exhaust the limits of liability of the underlying insurance. SECI further demanded that Arch Specialty authorize a contribution from the Policy's excess coverage layer to finalize SECI's portion of the Global Settlement.

39. Arch Specialty responded on November 18, 2014, and again denied coverage solely based upon its erroneous interpretation of the Policy's "Loss Payable" provision to mean that only payment by Federal, SECI's underlying insurer, can exhaust the limits of underlying insurance. Arch Specialty contended, in error, that SECI's contribution to exhaust the limits of liability of the underlying insurance did not exhaust the Federal policy and, hence, did not trigger Arch Specialty's excess coverage.

40. SECI's participation in the Global Settlement, including the amount SECI is legally obligated to pay under the Global Settlement, is reasonable in view of SECI's potential liability in the Underlying Actions, SECI's exposure to substantial damages potentially in excess of SECI's available insurance and other factors.

41. Arch Specialty denied coverage without a reasonable basis.

42. Arch Specialty denied coverage without first performing any reasonable investigation into the facts alleged in the Underlying Lawsuit.

43. Arch Specialty denied coverage without first requesting any information from SECI that could bear on coverage.

44. Arch Specialty denied coverage without first interviewing any witnesses or examining any documents or other evidence beyond the Fourth Amended Motion to Authorize the Bringing of a Class Action & to Ascribe the Status of Representative.

45. Arch Specialty denied coverage without first performing any reasonable investigation to determine what state's law governed the interpretation of the Policy or what facts may be considered in determining coverage under applicable law and industry standards.

46. Arch Specialty denied coverage without acknowledging or applying controlling legal standards, including that exclusions and limitations must be construed narrowly and in favor of coverage.

47. Arch Specialty denied coverage based solely on a contract provision that, on its face, permits SECI to contribute toward the exhaustion of the limits of liability of the underlying insurance and thereby trigger Arch Specialty's excess coverage.

48.   Arch Specialty's denial of coverage and refusal to contribute to the Global Settlement was not supported by a reasonable investigation and did not have a reasonable basis.

## FIRST CLAIM FOR RELIEF
(Breach of Contract – Duty to Indemnify)

49.   SECI incorporates by reference the allegations contained in the paragraphs above as though set forth herein.

50.   Arch Specialty issued the Policy to SECI. The Policy constitutes a contract between Arch Specialty and SECI.

51.   SECI is an insured under the Policy.

52.   SECI satisfied all conditions precedent to recovery under the Policy.

53.   The Global Settlement, to which SECI is a party, constitutes a loss for which coverage is provided under the controlling underlying insurance (i.e., the Federal policy) and the Arch Specialty Policy.

54.   SECI is legally liable to pay an amount toward the Global Settlement that exceeds the limits of the Federal policy.

55.   Arch Specialty breached its duties under the Policy by failing to pay that amount of the settlement which exceeds the total Limits of Liability of underlying insurance.

56.   SECI suffered, and will continue to suffer, damages in an amount to be established at trial resulting from Arch Specialty's breach of its contractual duties as set forth herein.

## SECOND CLAIM FOR RELIEF
(Common Law Insurance Bad Faith)

57.   SECI incorporates by reference the allegations contained in the paragraphs above as though set forth herein.

58.   The Policy contains an implied duty of good faith and fair dealing under which Arch Specialty agreed to treat SECI fairly, honestly and in good faith; faithfully perform its duties under the Policy; and do nothing to impair, interfere, hinder, or potentially injure SECI's rights to receive the benefits of the Policy.

59.   Under applicable law, Arch Specialty had a duty to act reasonably and in good faith at all times in the handling of SECI's claim under the Policy and in all its dealings with SECI.

60.   Arch Specialty breached its duty of good faith and fair dealing to SECI through acts and omissions that include (but are not limited to) denying coverage for its portion of the

Global Settlement of the Underlying Actions without a reasonable basis and failing to adequately investigate SECI's claim under the Policy.

61. Arch Specialty breached its duty of good faith and fair dealing to SECI by "[m]isrepresenting pertinent facts or Policy provisions relating to coverages at issue." C.R.S. § 10-3-1104(1)(h)(I). Arch Specialty misrepresented the provisions related to coverages at issue when, *inter alia*, it contended that the "Loss Payable" provision excludes coverage under the circumstances, contrary to the plain language of the provision.

62. Arch Specialty refused "to pay claims without conducting a reasonable investigation based upon all available information." *Id.* § 10-3-1104(1)(h)(IV).

63. Arch Specialty improperly compelled SECI to institute litigation to recover amounts due under the Policy. *Id.* § 10-3-1104(1)(h)(VII).

64. Arch Specialty failed "to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim . . . ." *Id.* § 10-3-1104(1)(h)(XIV).

65. As a result of Arch Specialty's conduct, SECI has suffered and will continue to suffer damages in an amount to be proven at trial.

66. The injuries resulting from Arch Specialty's bad faith breach of its Policy are attended by circumstances of malicious and willful and wanton conduct, entitling SECI to an award of exemplary damages. Accordingly, SECI reserves the right to amend its complaint at the appropriate time to assert a claim for punitive damages.

### THIRD CLAIM FOR RELIEF
(Violation of C.R.S. §§ 10-3-1115 and -1116)

67. SECI incorporates by reference the allegations contained in the paragraphs above as though set forth herein.

68. SECI is a "first-party claimant" under C.R.S. §§ 10-3-1115 and -1116.

69. Arch Specialty is engaged in the business of insurance, including with respect to the Policy.

70. Arch Specialty has unreasonably denied and delayed payment of a claim for insurance benefits owed to or on behalf of SECI by refusing to indemnify SECI as set forth above, as required by its Policy.

71. Arch Specialty's delay and its denial of payment of benefits owed to or on behalf of SECI was unreasonable because there was no reasonable basis for the delay and denial. For example, Arch Specialty denied coverage under the Policy based solely upon an erroneous interpretation of its Policy.

8

72. As a result of Arch Specialty's unreasonable denial and delay of payment of covered benefits, SECI has suffered and will continue to suffer damages in an amount to be proven at trial.

73. Pursuant to C.R.S. § 10-3-1116, SECI is entitled to the covered benefit under the Policy, plus two times the covered benefit and attorneys' fees and costs, from Arch Specialty.

## CONCLUSION

WHEREFORE, SECI respectfully requests the Court grant the following relief:

74. Judgment against Arch Specialty and in favor of SECI for damages in connection with the claims asserted together with pre-judgment and post-judgment interest, expert witness fess, costs and fees (pursuant to the Policy, or as otherwise permitted by law) in an amount to be determined at trial;

75. Attorney fees and costs as permitted by C.R.S. § 10-3-1116 and any other applicable law;

76. Damages in the amount of the covered benefit under the Policy, plus two times the covered benefit, pursuant to C.R.S. § 10-3-1116; and

77. Such other and further relief as the Court deems proper.

PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES.

Dated: March 27, 2015                           Respectfully submitted,

*s/Christopher R. Mosley*
Christopher R. Mosley, #24440
Katherine D. Varholak, #35498
633 17th Street, #3000
Denver, CO 80202
(303) 297-2900
(303) 298-0940
cmosley@shermanhoward.com
kvarholak@shermanhoward.com
Attorneys for Plaintiff Slawson Exploration Company, Inc.

Plaintiff's mailing address:
Slawson Exploration Company, Inc.
1675 Broadway, Suite 1600
Denver, Colorado 80202

9